UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| UNITED STATES OF AMERICA | CRIMINAL ACTION |
| VERSUS | NO: 02-304 |
| DARRYL FRANKLIN | SECTION: "J" |

## ORDER AND REASONS

Before the Court is a *Motion for Compassionate Release/Reduction in Sentence Pursuant to 18 U.S.C. Section 3582(c)(1)(A)(i)* **(Rec. Doc. 515)** filed by Darryl Franklin. The United States of America opposed the motion (Rec. Doc. 528), and Mr. Franklin filed a reply memorandum (Rec. Doc. 532). Having considered the motion and legal memoranda, the record, and the applicable law, the Court finds that the motion should be **DENIED**.

## FACTS AND PROCEDURAL BACKGROUND

In March of 2003, Darryl Franklin pleaded guilty, pursuant to a plea agreement, to five of the eleven counts charged in a superseding indictment. Counts Two and Eight charged Franklin with three separate incidents of carjacking, while Count Six charged him with attempted carjacking. In Count Four, Franklin was charged with carjacking with the intent to cause death or serious bodily harm, and for Count Ten, Mr. Franklin pleaded guilty to carjacking which resulted in the intentional killing of Christopher Briede. Mr. Franklin also agreed that the appropriate sentence in his case was a term of life imprisonment. In addition to his

federal sentence, Franklin received a life sentence in Criminal District Court in Orleans Parish pursuant to a guilty plea for first degree murder. (Rec. Doc. 95, at 2).

In 2016, approximately thirteen years after he was sentenced, Mr. Franklin filed a motion to vacate his sentence pursuant to 28 U.S.C. § 2255 (Rec. Doc. 432), which the Court denied (Rec. Docs. 452, 453). He later sought relief under Rule 60(b). (Rec. Doc. 455). The Fifth Circuit instructed the Court to evaluate Franklin's Rule 60(b) motion under Rule 59(e). (Rec. Doc. 485). The Court subsequently denied this relief. (Rec. Doc. 493).

Then, in July of 2024, Mr. Franklin filed his first motion for compassionate release. (Rec. Doc. 505). The Government filed its opposition to his motion (Rec. Doc. 507), and then Mr. Franklin sought an extension of time to file his reply (Rec. Doc. 508), which the Court granted (Rec. Doc. 509). He filed yet another motion for extension of time to file his reply memorandum, but he ultimately moved to withdraw his motion for compassionate release all together. (Rec. Doc. 512). Most recently, Mr. Franklin filed the instant motion for compassionate release pursuant to 18 U.S.C. § 3582.

## LEGAL STANDARD

"A court, on a motion by the [Bureau of Prisons ("BOP")] or by the defendant after exhausting all BOP remedies, may reduce or modify a term of imprisonment, probation, or supervised release after considering the factors of 18 U.S.C. § 3553(a), if 'extraordinary and compelling reasons warrant such a reduction.'" *United States v. Chambliss*, 948 F.3d 691, 692–93 (5th Cir. 2020) (quoting § 3582(c)(1)(A)(i)). To meet

the exhaustion requirement, a defendant must submit a request to "the warden of the defendant's facility" for the BOP "to bring a motion [for compassionate release/sentence reduction] on the defendant's behalf." § 3582(c)(1)(A). If the request is denied, the defendant must pursue and exhaust "all administrative rights to appeal." *Id.* Alternatively, the requirement is considered satisfied after "30 days from the receipt of such a request by the warden." *Id.*

Once a defendant has exhausted his administrative remedies, the Court may then reduce the defendant's term of imprisonment if it finds that extraordinary and compelling reasons warrant a sentence reduction. § 3582(c)(1)(A)(i). This reduction must be consistent with applicable policy statements of the Sentencing Commission. § 3582(c)(1)(A). Section 3582(c)(1)(A)(i)'s use of "extraordinary and compelling" captures "the truly exceptional cases that fall within no other statutory category" and sets "an exceptionally high standard for relief." *United States v. McCoy*, 981 F.3d 271, 287–88 (4th Cir. 2020). The defendant has the burden to demonstrate the extraordinary and compelling reasons supporting his release. *See United States v. Washington*, No. 16-19, 2020 WL 4000862, at *3 (E.D. La. July 15, 2020) (Morgan, J.). The U.S. Sentencing Guidelines provide that a reduction should be granted only if the "defendant is not a danger to the safety of any other person or to the community." U.S.S.G. § 1B1.13(a)(2) (p.s.).[1] If the Court grants a sentence reduction, it may impose a term of supervised release with conditions, including home

[1] Policy statements are binding in § 3582(c) proceedings. *United States v. Garcia*, 655 F.3d 426, 435 (5th Cir. 2011).

confinement, "that does not exceed the unserved portion of the original term of imprisonment." § 3582(c)(1)(A).

**DISCUSSION**

Under 18 U.S.C. § 3582(c)(1)(A), as modified by Section 603 of the First Step Act, a sentencing court may reduce an imposed sentence upon a showing of either extraordinary and compelling reasons or the following: that the defendant is at least 70, has served at least 30 years in prison, and is no longer a danger to any other person or his community. Because the second situation does not apply to Mr. Franklin, he must demonstrate that there are extraordinary and compelling reasons for the Court to reduce his sentence, which, again, is "an exceptionally high standard for relief." *McCoy*, 981 F.3d at 288. Further, "Congress has not defined what constitutes 'extraordinary and compelling reasons' for a sentence reduction[.]" *United States v. Cooper*, 996 F.3d 283, 287 (5th Cir. 2021).

The Sentencing Commission, however, provided six categories of extraordinary and compelling reasons in its corresponding policy statement: (1) medical conditions; (2) advanced age; (3) family circumstances; (4) physical or sexual abuse, under certain conditions, while incarcerated; (5) other reasons that "are similar in gravity" to the previous four; and (6) an unusually long sentence. U.S.S.G. § 1B1.13(b) (p.s.). Franklin contends that the Court should grant compassionate release based in part on a medical condition; however, he has not provided any documentation or evidence to substantiate this claim. Therefore, the Court must determine whether the other

reasons he puts forward constitute extraordinary and compelling reasons to justify a reduced sentence.

The Government contends that Mr. Franklin has not exhausted his administrative remedies. In fact, Mr. Franklin revealed in an attachment to his motion that he filed the instant motion with the Court less than thirty (30) days after submitting his request to the warden *and* before receiving the warden's response. (Rec. Doc. 515-2, at 3). The Court agrees that Mr. Franklin's motion could be denied on this basis alone. However, based on Mr. Franklin's persistent history of filing motions for post-conviction relief, and considering that the instant motion is fully briefed, the Court will decide the motion on its merits.

Mr. Franklin argues that the Court should reduce his sentence to time served because "when Mr. Franklin was sentenced between 2002–2003, the court was not applying Apprendi and Jones to sentencing," and the "court did not understand what Apprendi stood for." (Rec. Doc. 515, at 8). Mr. Franklin relies primarily on the Supreme Court's holding in *Apprendi v. New Jersey* that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." *Apprendi v. New Jersey*, 530 U.S. 466, 490 (2000). More specifically, Mr. Franklin contends that the Court "use[d] a guideline or an offense that requires a mens rea higher than possessed by the defendant" (Rec. Doc. 515, at 3), implying that this Court, rather than a jury, decided that Mr. Franklin possessed specific intent to

commit murder and sentenced him accordingly. This argument fails for a number of independent reasons.

First, this Court made no finding whatsoever concerning Mr. Franklin's mens rea. Instead, Mr. Franklin, with advice of counsel, reached a plea agreement with the Government in which he agreed to plead guilty to five counts of the superseding indictment, and the Court sentenced him based on this plea. The cases Mr. Franklin cites deal with defendants who had jury trials, which he did not. The Court did not make any determinations as to Mr. Franklin's guilt beyond what Mr. Franklin agreed and admitted to, nor did the Court reach any findings about his mental state or intent. Therefore, Mr. Franklin's argument this his "life sentence is illegal as it was based on judge-found facts," *id.* at 13, fails because it is based on an entirely false premise.

Second, Mr. Franklin misunderstands the sentencing guidelines and how they worked in his particular case. He maintains that he "would not have pleaded guilty, had he known that he could not be sentenced to life for first degree murder without each of the elements proven, criminal liability, and mental state." (Rec. Doc. 515, at 11). Mr. Franklin was *not* sentenced based on a first degree murder offense. Along with four other counts, he pleaded guilty to carjacking which resulted in the death of Christopher Briede. Franklin takes issue with the fact that the sentencing guideline pertaining to robbery, § 2B3.1, which applies to the carjacking charge, is cross-referenced with § 2A1.1, which should be applied when "a victim was killed under circumstances that would constitute murder under 18 U.S.C. § 1111." U.S.S.G.

§ 2B3.1(c)(1). Mr. Franklin pleaded guilty to carjacking which resulted in Christopher Briede's death, and therefore, a victim, Christopher Briede, was killed under circumstances that would constitute murder under 18 U.S.C. § 1111. Accordingly, the Court looked to § 2A1.1 when calculating Mr. Franklin's guidelines.

While it is true that § 2A1.1 provides the sentencing guidelines for first degree murder, the definition of first degree murder is broader than Mr. Franklin realizes. First degree murder does not require a finding of specific intent when it is committed during the perpetration of certain enumerated felonies. The relevant portions of 18 U.S.C. § 1111 read as follows:

> Murder is the unlawful killing of a human being with malice aforethought. Every murder . . . committed in the perpetration of, or attempt to perpetrate, any arson, escape, murder, kidnapping, treason, espionage, sabotage, aggravated sexual abuse or sexual abuse, child abuse, burglary, or *robbery* . . . is murder in the first degree.

18 U.S.C. § 1111 (emphasis added). Put another way, because Mr. Franklin was engaged in the perpetration of one of the specifically enumerated felonies (i.e., carjacking/robbery) when he and Mr. Nelson unlawfully killed Christopher Briede, his intent to kill Mr. Briede was irrelevant. Under these facts, a charge of felony murder does not require specific intent to kill.

Mr. Franklin asserts that if he were sentenced today, he would have a base offense level of 20 under the sentencing guideline for robbery, § 2B3.1, and would therefore receive a sentencing range of 33–41 months. This is patently untrue. As the Government notes, if Mr. Franklin were sentenced today, he would still have a base offense level of 43 under the sentencing guidelines. Moreover, Mr. Franklin entered

an § 11(c)(1)(C) plea, as part of which he and the Government specifically agreed to a term of life imprisonment rather than the death penalty. Under these facts, there is no question that Mr. Franklin knew when he pled guilty that he would serve a lifetime sentence, and if sentenced today, he would be subject to the same sentencing guidelines.

Apart from the sentencing guidelines, Mr. Franklin urges the Court to reduce his sentence based on his "dire health circumstances." (Rec. Doc. 515, at 1). He claims to suffer from paroxysmal supraventricular tachycardia (PVST), "which is an often-fatal cardiac arrhythmia and the cause of sudden death in otherwise healthy individuals." *Id.* at 16. However, the Government rightly notes that Mr. Franklin does not provide any medical records or documentation, nor does he explain how this medical condition might justify a reduced sentence. Therefore, the Court does not find that Mr. Franklin's health condition constitutes an extraordinary or compelling reason that would warrant compassionate release.

Lastly, Mr. Franklin argues that he was only nineteen (19) when he committed the offenses to which he pleaded guilty, but this is a fact that the Court considered at the time of his sentencing. He also claims, without any type of support, that he "has undertaken a plethora of positive programming and rehabilitative classes which have been undertaken on his own betterment." *Id.* at 7. Mr. Franklin has not provided any details or specific evidence to substantiate this claim, so the Court cannot consider this an extraordinary and compelling reason that would justify granting compassionate release.

The Court finds that Mr. Franklin has not carried his burden to demonstrate an extraordinary and compelling reason for a sentence reduction, so the analysis could end here. However, the Government claims that the sentencing factors in 18 U.S.C. § 3553(a) also counsel against Mr. Franklin's early release. These sentencing factors include the following:

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
> (2) the need for the sentence imposed—
>> (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>> (B) to afford adequate deterrence to criminal conduct;
>> (C) to protect the public from further crimes of the defendant; and
>> (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner . . . .

18 U.S.C. § 3553(a).

The Government contends that Mr. Franklin "committed an especially heinous and violent crime" when he and his co-defendant Bryan Nelson murdered Christopher Briede. (Rec. Doc. 528, at 10). Franklin, Nelson, and another young man saw the Briedes walking to their car outside their home when the three men decided to block them in the driveway. At this point, Franklin and Nelson brandished a shotgun and ordered Christopher and Amy Briede into their home after stealing Amy's purse. Franklin and Nelson forced Christopher Briede to help them unplug electronic devices, and then Nelson took Amy Briede to the ATM where he withdrew $300, the maximum amount allowed by the bank.

When Nelson returned to the Briedes' home, he and Franklin ordered the couple to go into the bathroom, lock the door, and not to call the police. Franklin and

Nelson had the power to end the Briedes' nightmare here, but instead, a few minutes later, he and Nelson forced the bathroom door open and ordered the Briedes to come out and lie down on the floor. Nelson directed Franklin, who was holding the shotgun, to "go ahead," but for whatever reason, Franklin refused, at which point Nelson grabbed the gun from him and shot Christopher Briede. Nelson also turned the gun on Amy and pulled the trigger, but the gun jammed. Franklin and Nelson exited the house and stole the Briedes' car before leaving.

Mr. Franklin emphasizes that he was not the person who fired the shot that killed Christopher Briede and that he did not possess specific intent to kill. These facts are irrelevant under the statute to which Mr. Franklin pleaded guilty and to the sentencing guidelines in his case. Furthermore, the nature and circumstances of his offense are harrowing. Simply put, they forcefully weigh against a sentence reduction for Mr. Franklin, and they call into question whether he would pose a danger to the safety of other individuals and his community if released.[2]

Moreover, granting a sentence reduction would undermine the need for the sentence to reflect the seriousness of the offense and to provide just punishment. As the Government notes, the "grant of compassionate release here would effectively reduce the defendant's sentence from life to approximately 23 years." (Rec. Doc. 529,

---

[2] The Factual Basis to which Mr. Franklin agreed on March 22, 2003, also details another incident in which Mr. Franklin used violence during the commission of a carjacking. On March 11, 2002, Franklin and Nelson followed a couple in a car from Harrah's in New Orleans, and when Nelson pulled up beside the car and forced it off the road, "Franklin began firing at the driver. He shot approximately 6 to 8 times at the car, directly at the driver, through the windshield. Franklin stated that he believed he killed the woman but wasn't sure about the man." (Rec. Doc. 96, at 2–3). Particularly considering this incident in conjunction with the murder of Christopher Briede, the Court has serious concerns about Mr. Franklin's potential threat to public safety.

at 10) (citation omitted). The Government also maintains, and the Court agrees, that a sentence reduction for Mr. Franklin would set a dangerous precedent because it would not afford adequate deterrence to the most serious criminal conduct there is: murder.

Accordingly, based on the totality of the circumstances, the Court concludes that Mr. Franklin's motion for a sentence reduction pursuant to 18 U.S.C. § 3582 should be denied. Mr. Franklin has not met his burden of demonstrating an extraordinary and compelling reason for the Court to grant a sentence reduction, and the § 3553(a) factors also weigh against compassionate release.

The Court commends Mr. Franklin for the progress he has made while incarcerated and sincerely hopes that he will continue to seek out opportunities to better himself.

## CONCLUSION

Accordingly,

**IT IS HEREBY ORDERED** that Defendant Darryl Franklin's *Motion for Compassionate Release/Reduction in Sentence Pursuant to 18 U.S.C. Section 3582(c)(1)(A)(i)* **(Rec. Doc. 515)** is **DENIED**.

New Orleans, Louisiana, this 16th day of September, 2026.

CARL J. BARBIER
UNITED STATES DISTRICT JUDGE